IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DYLAN ERIC LANDERS,

Plaintiff,

vs.

NEBRASKA DEPARTMENT OF CORRECTIONS, SCOTT FRAKES, DIANE SABATKA-RINE, and MEMBERS OF THE CENTRAL OFFICE MULTI-DISCIPLINARY REVIEW TEAM,

Defendants.

**8:17CV371**

**MEMORANDUM AND ORDER**

Plaintiff filed a Complaint on October 6, 2017. (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 6.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff is a prisoner currently confined at the Nebraska State Penitentiary ("NSP"). He seeks injunctive and declaratory relief under 42 U.S.C. § 1983 against the Department of Correctional Services ("NDCS"); Scott Frakes, Director of NDCS; Diane Sabatka-Rine, Deputy Director of Operations of NDCS; and the members of the Central Office Multi-Disciplinary Review Team (hereinafter "Review Team members"). Plaintiff alleges he has been confined repeatedly in segregation in violation of his rights to due process and to be free from cruel and unusual punishment under the 5th, 8th, and 14th Amendments.

Plaintiff alleges that he was first placed on the Special Management Unit in Immediate Segregation at the Tecumseh State Correctional Institution ("TSCI") on May 17, 2015. Prison officials told Plaintiff he was being investigated for involvement in the previous week's riot at TSCI and pending criminal charges. (Filing No. 1 at CM/ECF p.16.) Plaintiff was never issued a misconduct report for any conduct relating to the riot. Plaintiff states he was eventually placed on Administrative Confinement "pending the outcome of an external investigation regarding the 5/10/15 disturbance" and was told he would be released once the investigation concluded. (*Id*.) Plaintiff remained on Administrative Confinement until February 4, 2016, when he was reclassified as General Population and his administrative segregation ended. However, Plaintiff remained housed in the Special Management Unit which Plaintiff alleges does not meet NDCS qualifications for General Population due to inmates receiving less than six hours out-of-cell time.

On April 19, 2016, Plaintiff was returned to Immediate Segregation status, and a subsequent classification action placed him on Administrative Confinement. Again, Plaintiff was told his placement was "pending the outcome of an external investigation regarding the 5/10/15 disturbance." (*Id*. at CM/ECF p.17.) Even though Plaintiff had never returned to General Population, his official paperwork showed that he had been re-classified to segregation. Plaintiff was later told by Deputy Warden Scott Busboom that Plaintiff should never have been classified as General Population, "calling it 'a mistake.'" (*Id*.)

Plaintiff remained on Administrative Confinement until the summer of 2016 when his classification was relabeled "Long-Term Restrictive Housing" ("LTRH") as a result of the Nebraska Legislature's passage of "L.B. 598." (*Id*. at CM/ECF p.18.) The basis for and treatment under LTRH is the same as that of Administrative Confinement. Plaintiff remained on LTRH until February 15, 2017, when he was placed in General Population following his transfer from TSCI to the NSP in Lincoln, Nebraska.

On March 8, 2017, Plaintiff was again placed in Immediate Segregation and was told by correctional officers that the placement related to his involvement in the May 10, 2015 TSCI riot and the pending external investigation. Plaintiff alleges NDCS staff told him they were acting on representations from "the Warden and the Administration" that Plaintiff would be "imminently charged." (*Id*. at CM/ECF p.19.) The official reason given for Plaintiff's segregation was the same reason given for Plaintiff's previous 21-month confinement and states: "On 5/10/2015 at TSCI, inmate Landers, Dylan, #72127 was involved in a large inmate disturbance. During the course of this disturbance, staff members were assaulted, housing units were set on fire, and two inmates were murdered. Inmate Landers is currently the subject of an ongoing investigation regarding the disturbance." (*Id*. at CM/ECF pp.19–20.)

Plaintiff alleges he appealed his March 8, 2017 reclassification to segregation to the Warden. On April 6, 2017, Plaintiff was informed by prison staff that the Review Team, which is responsible for reviewing Plaintiff's repeated LTRH placement, indicated they would need a different reason than the alleged investigation to "place on the paperwork . . . to mitigate any potential litigation [Plaintiff] may bring forth." (*Id*. at CM/ECF p.20.) Plaintiff states he was then informed that Deputy Director Sabatka-Rine ordered staff to file an extension for his immediate segregation so that the paperwork could be altered. On the following day, April 7, 2017, Plaintiff alleges he was given a new referral for LTRH which, in addition to the ongoing investigation of the TSCI riot, was based on Plaintiff's alleged involvement in "the 'Peckerwoods' security threat group," his "dangerous or threatening behavior," and the need to "mitigate the risk of his committing future serious assaults." (*Id*. at CM/ECF p.21.) Plaintiff denies he has committed any assaults and claims he has not been issued any "security threat" misconduct reports in three years. (*Id*.) Plaintiff alleges he was informed that Director Frakes and Deputy Director Sabatka-Rine amended the LTRH referral to include the new allegations with the intent to keep Plaintiff in segregation.

Plaintiff alleges he has participated in the review process to transition to a less-restrictive environment, but he has been denied release from segregation by Frakes and Sabatka-Rine despite recommendations from staff in his housing unit. Plaintiff further alleges he appealed his classification in segregation at both TSCI and at NSP, but all his appeals have been denied, even though he has had no misconduct reports. Plaintiff claims he was told by Frakes, Sabatka-Rine, and the Review Team that he would be released from segregation once the external investigation concluded. (*Id.* at CM/ECF pp.18–19, 22.) Plaintiff alleges the investigation has concluded, yet he remains in segregation where he is not allowed to shower, use the telephone, or receive any visitation from family. (*Id.* at CM/ECF pp.14, 24.)

As relief, Plaintiff seeks an injunction requiring NDCS, Frakes, and Sabatka-Rine to: (1) release him from segregation and place him in General Population; (2) cease all placements of Plaintiff in any form of "alternative housing" more restrictive than General Population; and (3) cease all restrictions that deprive Plaintiff of privileges which he has not specifically abused "as stated in L.B. 598." (*Id.* at CM/ECF p.25.) Additionally, Plaintiff seeks an injunction against the members of the Review Team to cease "being 'rubber stamps' and approving segregational classifications when little or no factual evidence exists." (*Id.* at CM/ECF p. 27.) Plaintiff also asks the court to declare that his segregation under the conditions alleged and the "sham reviews" provided him violate his rights under the 5th, 8th, and 14th Amendments and that Frakes "has attempted to harm Plaintiff by holding him in prolonged segregation after acknowledging the harmful affects [sic] and very counterproductive results of it to local news outlets." (*Id.* at CM/ECF p.26.)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See*

28 U.S.C. §§ 1915(e) and1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION

### A. Sovereign Immunity

Plaintiff has sued NDCS, Frakes, Sabatka-Rine, and the Review Team members in their official and individual capacities. Thus, the first question the court must address is to what extent, if any, the Eleventh Amendment bars his claims.

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations. This exception does not apply to cases involving requests for purely retroactive relief. *Green v. Mansour*, 474 U.S. 64 (1985).

Although Plaintiff requests "compensatory damages" for the costs related to filing this action, Plaintiff does not specifically request monetary damages in this case. Rather, Plaintiff requests declaratory and injunctive relief. To the extent Plaintiff seeks a declaration of past constitutional violations, Plaintiff's claims for declaratory relief against Defendants in their official capacities are barred by Eleventh Amendment sovereign immunity. *Jacobson v. Bruning*, No. 4:06-CV-3166, 2007 WL 1362638, at *2 (D. Neb. Apr. 24, 2007) ("a declaratory judgment establishing past liability of the State is . . . forbidden by the Eleventh Amendment" (italics in original) (citing *Verizon Maryland, Inc. v. Public Service*

*Comm'n of Maryland*, 535 U.S. 635, 646 (2002))); *Hansen v. Vampola*, No. 4:07CV3074, 2007 WL 1362689, at *2 (D. Neb. Apr. 16, 2007) ("A declaratory judgment establishing only the **past liability** of the state is forbidden by the state's sovereign immunity preserved by the Eleventh Amendment to the Constitution." (bold in original)).

There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Thus, Plaintiff's claims for declaratory relief for alleged past violations of federal law against the NDCS, Frakes, Sabatka-Rine, and the Review Team members in their official capacities are barred by the Eleventh Amendment and must be dismissed.

As discussed below, however, Plaintiff's claims for prospective injunctive relief against the defendant state officials[1] are not barred by sovereign immunity.

**B. Claims against Frakes, Sabatka-Rine, and the Review Team Members**

Liberally construed, Plaintiff alleges that Defendants have confined him in segregation nearly continuously for over two and a half years in violation of his rights to due process and to be free from cruel and unusual punishment.

"An inmate who makes a due process challenge to his segregated confinement must make a threshold showing that the deprivation of which he complains imposed an atypical and significant hardship." *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (internal quotations omitted); *see also Sandin v.*

[1] Landers named NDCS as a Defendant in its official capacity. A suit may be brought under § 1983 only against a "person" who acted under color of state law. A state, its agencies and instrumentalities, and its employees in their official capacities are not a 'persons' "as that term is used in § 1983, and [are] not suable under the statute, regardless of the forum where the suit is maintained." *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200–01 (1991). *See also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983). Thus, § 1983 does not create a cause of action against NDCS.

*Conner*, 515 U.S. 472, 484 (1995). The Eighth Circuit has consistently held that "administrative and disciplinary segregation are not atypical and significant hardships[.]" *Portley-El*, 288 F.3d at 1065; *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."). However, under certain circumstances, prolonged confinement in administrative segregation can rise to the level of an atypical and significant hardship. *See Williams v. Norris*, 277 Fed.Appx. 647, 648 (8th Cir. 2008) (holding that an inmate's 12 years in administrative segregation confinement constituted an atypical and significant hardship); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (holding that inmate's almost eight years in administrative custody was "atypical" and he had protected liberty interest); *Herron v. Schriro*, 11 Fed.Appx. 659, 661–62 (8th Cir. 2001) (unpublished per curiam decision) (affirming district court's finding that inmate's lengthy administrative segregation confinement, more than 13 years, resulted in atypical hardship in relation to ordinary incidents of prison life, and defendants could not continue to deprive inmate of general population status without affording him due process). The factors bearing on whether placement in segregation imposes the kind of atypical and significant hardship which gives rise to a liberty interest are objective, i.e.: (1) the conditions of confinement in segregation; (2) the length of time spent in segregation; and (3) the effect, if any, on the duration of the prisoner's incarceration. *Sandin v. Conner*, 515 U.S. at 486–87.

Similarly, under an 8th Amendment analysis, administrative segregation "is not necessarily unconstitutional, but it may be, depending on the duration of the confinement and the conditions thereof." *Hutto v. Finney*, 437 U.S. 678, 685–86 (1978) (internal quotations omitted).

> To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive

> risk to inmate health or safety," meaning that the officials actually knew of and disregarded the risk."

*Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

After careful review of Plaintiff's Complaint, the court finds Plaintiff has stated plausible claims for relief against Defendants Scott Frakes, Diane Sabatka-Rine, and the Review Team members in their official and individual capacities. All of these Defendants are alleged to have been involved in the decisions and review processes concerning Plaintiff's prolonged confinement in segregation. Liberally construed, Plaintiff's allegations that he has been held in segregation for over two and a half years and is not allowed to shower, to use the telephone, or have any visitation are sufficient to state plausible claims for relief at this juncture of the case. The court cautions Plaintiff that this is only a preliminary determination based on his allegations and is not a determination of the merits of his claims or potential defenses thereto.

**C. State Law Claims**

Plaintiff alleges Defendants violated various state statutes. At this time, the court makes no finding with respect to its jurisdiction over these claims or whether they state a claim upon which relief may be granted. In order to ensure a just and fair resolution of this matter, Plaintiff's state-law claims will be allowed to proceed to service of process against Frakes, Sabatka-Rine, and the Review Team members along with the Due Process and Eighth Amendment claims detailed above.

## IV. OTHER PENDING MOTIONS

### A. Motion for Clarification and Appointment of Counsel

Plaintiff filed a motion for clarification regarding the status of his case and for appointment of counsel on January 25, 2018. (Filing No. 11.) Plaintiff's motion for clarification is granted consistent with this Memorandum and Order. The court has completed its initial review of Plaintiff's Complaint and the case may proceed to service of process as the court has outlined.

With respect to Plaintiff's request seeking the appointment of counsel, the court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id*. Having considered these factors, the request for the appointment of counsel will be denied without prejudice to reassertion.

### B. Motion for Service

Plaintiff filed a Motion asking the clerk of the court to serve a copy of the Complaint on the Nebraska Attorney General. (Filing No. 13.) Plaintiff's motion is granted to the extent consistent with this Memorandum and Order.

### C. Motion for Injunction and Temporary Restraining Order

Plaintiff has filed a motion (Filing No. 14) seeking an injunction and temporary restraining order requiring Defendants to remove him from segregation and place him in General Population in Nebraska or General Population in a

California prison where Plaintiff's family resides. Plaintiff alleges he "is fearful for his mental health safety" due to his being held "in solitary confinement for a combined total of almost 32 (thirty-two) months." (*Id*. at CM/ECF p.1.)

The standards set forth by *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), apply to Plaintiff's motion. In *Dataphase*, the Eighth Circuit Court of Appeals, sitting en banc, clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest. *Id*. at 114. Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).

Plaintiff has not demonstrated he faces a threat of irreparable harm. While Plaintiff states he is fearful for his mental health based on known consequences "of the use of prolonged social-deprivation [sic] and . . . Learned Helplessness," (Filing No. 14 at CM/ECF pp.1–2), he does not state that he has actually suffered any adverse mental or physical health effects. Rather, the suggested threat of harm is merely speculative.

Because Plaintiff has not shown he faces a threat of irreparable harm, the court will deny his request for a temporary restraining order.

## V. CONCLUSION

Plaintiff's Complaint states plausible claims against Defendants Scott Frakes, Diane Sabatka-Rine, and the Review Team members in their official and individual capacities for violations of Due Process and the Eighth Amendment, but does not state any claims for relief against NDCS. Accordingly, this case will proceed to service of process against the defendant state officials.

As a litigant proceeding in forma pauperis in this case, Plaintiff is entitled to have service of process performed by the United States Marshals. However, the United States Marshal's Service cannot initiate service upon an unnamed defendant, and Plaintiff has not specifically identified the individual members of the Review Team. Therefore, the court will give Plaintiff 30 days in which to take reasonable steps to identify the individual members of the Review Team and notify the court of the members' names, after which the court will initiate service of process.

IT IS THEREFORE ORDERED that:

1. Landers' claims for declaratory relief for alleged past violations of federal law against Defendants in their official capacities are dismissed as barred by the Eleventh Amendment. Defendant Nebraska Department of Correctional Services is dismissed from this action.

2. This action may proceed to service of process as to Landers' Due Process, Eighth Amendment, and state law claims against defendants Scott Frakes and Diane Sabatka-Rine in their official and individual capacities, in addition to those as-yet unspecified members of the Central Office Multi-Disciplinary Review Team also in their official and individual capacities.

3. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

4. For service of process on Defendants Scott Frakes and Diane Sabatka-Rine in their official capacities, the clerk of the court is directed to complete summons forms and USM-285 forms for Defendant Scott Frakes and Defendant Diane Sabatka-Rine using the address "Office of the Nebraska Attorney General,

2115 State Capitol, Lincoln, NE 68509," and forward them together with a copy of the Complaint and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendants Scott Frakes and Diane Sabatka-Rine in their official capacities at the office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509.** *See* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-510.02 (Reissue 2016). [2]

5. For service of process on Defendant Scott Frakes in his individual capacity, the clerk of the court is directed to complete a summons form and a USM-285 form for Defendant Frakes using the address "Nebraska Department of Correctional Services, 801 West Prospector Place, Lincoln, NE 68522," and forward them together with a copy of the Complaint and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendant Frakes personally in his individual capacity at the Nebraska Department of Correctional Services, 801 West Prospector Place, Lincoln, NE 68522.** Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

6. For service of process on Defendant Diane Sabatka-Rine in her individual capacity, the clerk of the court is directed to complete a summons form and a USM-285 form for Defendant Sabatka-Rine using the address "Nebraska Department of Correctional Services, 801 West Prospector Place, Lincoln, NE

---

[2] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

68522," and forward them together with a copy of the Complaint and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendant Sabatka-Rine personally in her individual capacity at the Nebraska Department of Correctional Services, 801 West Prospector Place, Lincoln, NE 68522.** Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

7. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

8. The clerk of the court is directed to set the following pro se case management deadline: **May 29, 2018**: check for completion of service of process.

Dated this 27th day of February, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge